IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICAELA E. M.,

                Plaintiff,

    v.                                      Civil Action No.
                                                     5:21-CV-0907 (LEK/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP               HOWARD D. OLINSKY, ESQ.
250 South Clinton Street, Suite 210   CHRISTOPHER MILLIMAN, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.            NATASHA OELTJEN, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g), to challenge a determination of the Commissioner of Social Security

("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") benefits for which she has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that, for the reasons set forth below, the Commissioner's determination is not amenable to meaningful judicial review and therefore should be vacated.

I.   BACKGROUND

Plaintiff was born in December of 1990, and is currently thirty-one years of age. She was twenty-six years old on July 17, 2017, the date on which she alleges that her disability began, and twenty-seven years of age on July 21, 2018, the date she filed her application for benefits. Plaintiff stands five feet and seven inches in height, and weighed between approximately two hundred and fifty and two hundred and sixty-five pounds at the relevant times. Plaintiff lives in an apartment with her boyfriend in Liverpool, New York.

Plaintiff reports that she left high school in the tenth grade due to anxiety and bullying, but that she earned her GED soon thereafter. She testified that she was subject to a Section 504[1] plan when she was in school to allow her to

---

[1]   Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794.

have accommodations for testing. She attempted to attend college, but it did not work out, although she later successfully graduated from aesthetician school, which she reports took her longer than normal because of her anxiety. She worked most recently as a receptionist for a dental practice, a job which required her to handle phone calls and schedule appointments, but which she could also perform from home. She reports that she was let go from that job because she had to call in sick too many times due to panic attacks.

Plaintiff alleges that she suffers primarily from various mental conditions, including anxiety, panic attacks, and depression. She alleges that her anxiety and panic attacks prevent her from being able to attend work on a consistent basis. As is relevant to her application for benefits, plaintiff has treated for these impairments with sources at Family Care Medical Group, Loftus & Ryu Medical, therapist Sara Urciuoli at Branches of Growth, and Nurse Practitioner ("NP") Tammy Balamut.

Plaintiff testified that she is receiving mental health treatment and taking both Zoloft and lorazepam for her mental conditions. Lorazepam is used when she has a bad panic attack and it "knocks [her] out." Plaintiff reports experiencing daily anxiety with constant worry. Her panic attacks can either be triggered by certain circumstances, such as being around a large group of people, or can occur randomly. Those attacks last anywhere from thirty

minutes to a few hours. Plaintiff reports that she does not leave the house often because of her panic attacks, has problems sleeping, and finds it difficult to concentrate. Her boyfriend does the grocery shopping and she does not often see friends or family other than him. Plaintiff testified that she takes her dog outside, occasionally paints, uses social media, and can do chores, although she will not do chores when she is depressed.

## II. PROCEDURAL HISTORY

### A. Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on July 21, 2018.[2] In support of her application, she claimed to be disabled due to anxiety, panic disorder, and agoraphobia.

A hearing was conducted on October 19, 2020, by Administrative Law Judge ("ALJ") Joan H. Deans, to address plaintiff's application. Following that hearing, ALJ Deans issued an unfavorable decision on November 30, 2020. That opinion became a final determination of the agency on June 9, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

### B. The ALJ's Decision

In her decision, ALJ Deans applied the familiar, five-step sequential test

---

[2]   Plaintiff is insured for benefits under Title II through December 31, 2023.

4

for determining disability. At step one, she found that plaintiff worked after the alleged onset date of disability, but did not have sufficient countable earnings for that work to qualify as substantial gainful activity. The ALJ next found at step two that plaintiff suffers from medically determinable impairments that impose more than minimal limitations on her ability to perform basic work functions, including a generalized anxiety disorder, depression, and a panic disorder without agoraphobia. The ALJ also found, as part of her step two finding, that plaintiff's documented impairments of obesity, polycystic ovaries, hidradenitis, gastroesophageal reflux disease ("GERD"), vitamin D deficiency, headache, sinusitis, allergies, cannabis use disorder, and posttraumatic stress disorder ("PTSD") are all nonsevere impairments.

At step three, ALJ Deans examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), see 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions, specifically considering Listings 12.04, 12.06, and 12.15.

ALJ Deans next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following additional limitations:

> the claimant can understand, remember, carry out, and
> maintain attention and concentration for two hour blocks

5

>at a time on simple tasks consistent with unskilled work, with occasional work-related interaction with coworkers and supervisors, and should work away from the general public.

ALJ Deans went on to step four and found that plaintiff is unable to perform her past relevant work. Proceeding to step five, ALJ Deans elicited testimony from a vocational expert and, relying on that testimony, concluded that plaintiff remains able to perform available work in the national economy, citing as representative positions laundry worker, binder, and tumbler operator. Based upon these findings, ALJ Deans concluded that plaintiff was not disabled during the relevant time period.

C. <u>This Action</u>

Plaintiff commenced this action on August 12, 2021.[3] In support of her challenge to the ALJ's determination, plaintiff advances a single argument, contending that the ALJ erred in failing to assess the opinion from treating NP Tammy Balamut, claiming that, although that opinion was submitted to the ALJ after the administrative hearing, the ALJ should have considered it because plaintiff met the requirements of 20 C.F.R. § 404.935. Dkt. No. 14. Plaintiff further maintains that the failure to consider that opinion was not harmless error

---

[3]   This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

6

because the evidence in the record shows that it is both supported by NP Balamut's own records and explanations and consistent with the other evidence in the record related to plaintiff's anxiety and panic attacks. *Id.*

Oral argument was conducted in this matter, by telephone, on October 12, 2022, at which time decision was reserved.

III.   DISCUSSION

    A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will

withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); see also 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); accord, *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

  B. <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically

8

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the

agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

The sole issue presented in this appeal is whether the ALJ committed harmful error in failing to analyze the opinion from mental health NP Tammy Balamut, which was submitted after the administrative hearing but before ALJ Deans issued her decision. Plaintiff admits that the medical source statement was not submitted until after the ALJ conducted the administrative hearing related to her application, and thus not within five days of the administrative hearing as required by the regulations. Plaintiff argues, however, that she provided the ALJ with timely notice that records from NP Balamut had been requested and were outstanding, and has showed that she actively and diligently sought that evidence, but simply did not receive it prior to the hearing. Dkt. No. 14, at 12-13.

Pursuant to 20 C.F.R. § 404.935, commonly referred to as the agency's "five-day rule," a claimant must inform the agency about or submit any written evidence "no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). If the claimant fails to comply with this five-day requirement, "the administrative law judge may decline to consider or obtain the evidence," absent certain enumerated circumstances. *Id.* Those circumstances exist when the ALJ has not yet issued a decision, and the failure to inform the agency about or to submit the relevant evidence before the five-

day deadline was because (1) an action of the agency misled the plaintiff; (2) the plaintiff had a physical, mental, educational, or linguistic limitation that prevented him or her from informing about or submitting the evidence earlier; or (3) some other "unusual, unexpected, or unavoidable circumstance" beyond the plaintiff's control prevented him or her from informing about or submitting that evidence, such as (i) a serious illness that prevented the plaintiff from doing so either on his or her own or through another, (ii) there was a death or serious illness in the plaintiff's immediate family, (iii) important records were destroyed or damaged by some accidental cause, or (iv) the plaintiff actively and diligently sought evidence from a source and the evidence was not received more than five business days prior to the hearing.   20 C.F.R. § 404.935(b).

On September 25, 2020, plaintiff's counsel submitted a letter informing the ALJ that he had requested the following evidence: (1) "Sara Urciuoli, 113 Church Street, Syracuse, NY 13212, Medical Source Statement"; and (2) "Tammy Balamut, NP in Psychiatry, PLLC, 404 Oak Street Ste. 264, Syracuse, NY 13203, Dated: 7/17/2016 to Present."  Administrative Transcript ("AT") at 295.[4]  A letter dated October 1, 2020, reflects that plaintiff's counsel thereafter submitted "Medical Records from Tammy Balamut, NP in Psychiatry, PLLC

---

[4] The administrative transcript is found at Dkt. No. 11 and will be referred to throughout this decision as "AT __."

dated 9/1/20 and 9/22/20 (6 pgs.)." AT 296. At the hearing on October 19, 2020, the ALJ and plaintiff's representative specifically discussed those records from NP Balamut, with the ALJ confirming that the records that became Exhibit 11F, which were the records submitted with the October 1, 2020 letter, represented the outstanding records plaintiff's counsel had highlighted in the September 25, 2020 letter. AT 40-41. Plaintiff's representative answered that it was his understanding that the record was now complete with the addition of that evidence to the record. AT 41. On November 9, 2020, however, plaintiff's representative submitted a medical source statement from NP Balamut that is dated October 27, 2020. AT 29.

    Plaintiff appears to argue that the September 25, 2020 letter was sufficient to provide the ALJ with notice that her counsel was diligently seeking a medical source opinion from NP Balamut. This contention, however, appears to lack support. The September 25, 2020 letter plainly indicates that plaintiff's counsel had sought evidence from NP Balamut dated from July 17, 2016 "to present," meaning through September. It makes no reference to a request for a medical source statement from her in addition to treatment records. This is particularly notable because, in that same letter, plaintiff's counsel explicitly indicated he did seek a medical source statement from the other source mentioned. Also of note is the fact that, in a previous letter dated September

13

10, 2020, plaintiff's counsel advised that he was seeking evidence from "Sara Urciuoli, 133 Church Street, Syracuse, NY 13212, Dated: 7/17/16 to Present." AT 290.  Given that plaintiff therefore differentiated between the request for records from Ms. Urciuoli and the later request for a medical source statement from her, it would require a leap of logic to assume that the notation in the later letter regarding a request for records from NP Balamut inherently encompassed a request for a medical source statement.  Because plaintiff's counsel specifically mentioned that he was seeking a medical source statement from one source and not the other, I cannot say that this letter would have necessarily provided the ALJ with notice that plaintiff's counsel was seeking a medical source statement also from NP Balamut as contemplated by the regulations.

Plaintiff's interpretation would in fact be contradicted by her representative's own statements at the October 19, 2020, administrative hearing, in that he also did not advise the ALJ that a request for a medical source statement from NP Balamut was outstanding.  To the contrary, he stated that, with the admission of NP Balamut's treatment notes to the administrative record, it was his understanding that the record was complete.  AT 40-41.  There are also no further letters that indicate plaintiff made any attempt to obtain the medical source statement from NP Balamut more than five days prior

14

to the administrative hearing, and the statement of plaintiff's representative at the hearing that he believed the record to be complete suggests that there was no active attempt to obtain such an opinion at that time. I therefore find that plaintiff failed to inform the ALJ of NP Balamut's opinion within five days of the hearing.

Because it is undisputed that the agency received NP Balamut's opinion prior to the ALJ issuing her decision, the question becomes whether plaintiff's situation meets any of the special circumstances enumerated in the governing regulation. Notably, the only one that plaintiff argues should apply in this case is an unusual, unexpected or unavoidable circumstance in that she or her counsel actively and diligently sought the medical source statement from NP Balamut but it was not received until after the hearing. However, the record contains no evidence to support that assertion. As this court has recognized previously, "[u]nder SSA policy, an ALJ will find this exception applies if a claimant 'made a good faith effort to timely request, obtain, and submit evidence, but he or she did not receive the records at least five business days before the date of the scheduled hearing because of circumstances outside his or her control.'" *Robert L. v. Saul*, 19-CV-0415, 2020 WL 1689886, at *7 (N.D.N.Y. Apr. 7, 2020) (D'Agostino, J.) (citing Hearings, Appeals, and Litigation Law Manual I-2-6-59(B)(1) ("HALLEX")). As was discussed above, there is no

15

indication that plaintiff made any attempt to obtain a medical source statement from NP Balamut at any point prior to the date of the hearing. Plaintiff appears to rely solely on the September 25, 2020 letter to support her argument, but, again, that letter did not indicate she was seeking any medical source statement from NP Balamut, and plaintiff's representative's statements at the hearing do not support that they had sought any such statement prior to the hearing date. Plaintiff's efforts also do not appear to represent a good faith attempt to comply with the five-day rule given that plaintiff submitted the records from NP Balamut to the agency on October 1, 2020, more than two weeks prior to the administrative hearing, which indicates she had ample time to seek a medical source statement from NP Balamut between the time her treatment records were received and the date of the hearing, and yet seemingly did not do so until after the hearing. The fact that the opinion was submitted even a significant time before the ALJ issued her decision is simply not a sufficient basis for finding the ALJ was required to accept that evidence and consider it when rendering her decision. To hold to the contrary would be to ignore the explicit text of the regulation that requires the existence of special circumstances under the facts presented here.

    Despite all of the above, I find that remand is warranted because it is simply not clear that the ALJ did in fact decline to consider NP Balamut's

opinion based on the five-day rule. Particularly, despite the fact that NP Balamut's medical source statement was clearly submitted after the administrative hearing and not in accordance with the five-day rule, the ALJ stated at the beginning of her decision that "[t]he claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing." AT 13. She does not mention NP Balamut's medical source statement in her decision. The administrative transcript confirms that the ALJ also did not add NP Balamut's medical source statement as an exhibit to the record that she considered when rendering her decision. Because of the ALJ's notation that all evidence was submitted more than five days before the administrative hearing, it is unclear as to whether she was aware that NP Balamut had even submitted an opinion. Although there appears to be a basis on which she could have properly declined to consider that late-submitted opinion under the five-day rule, the fact that it is not readily apparent that she actually took that course of action leaves me unable to meaningfully review whether the ALJ's failure to consider that opinion was based on appropriate legal principles. *Jonathan V. v. Comm'r of Soc. Sec.*, 18-CV-1350, 2020 WL 1270655, at *3-4 (N.D.N.Y. Mar. 17, 2020) (Dancks, M.J.); *Samantha D. v. Comm'r of Soc. Sec.*, 18-CV-1280, 2020 WL 1163890, at *7-9 (N.D.N.Y. Mar. 11, 2020) (Baxter, M.J.).

The parties make contrasting arguments about whether the ALJ's failure to consider NP Balamut's opinion is harmless error or not. Although I agree with the Commissioner that it seems unlikely that opinion would have changed the ALJ's findings, such a finding is more appropriately to be made by the ALJ under the circumstances here, particularly given that the opinion expresses limitations stricter than those found by the ALJ. *See Jonathan V.*, 2020 WL 1270655, at *4-5 (finding that, "it is not clear the additional evidence was ever weighed at all and that should not be undertaken by this Court in the first instance"); *Samantha D.*, 2020 WL 1163890, at *8-9 (finding that "[t]he SSA erred in failing to address the question of whether Plaintiff had good cause for the tardy submission of Dr. Kishoe's medical source statement, and it would be inappropriate for this Court to consider that factual issue as a matter of first impression on appeal," but also noting that it was likely that the omitted medical source statement likely would have been material).

In sum, I find that the ALJ's failure to indicate how she resolved issues related to the submission of NP Balamut's opinion or to even make clear that she was aware that opinion existed prevents meaningful review and requires remand for further proceedings. This decision should not be read as undermining the five-day rule, instead turning upon the narrow basis that the ALJ is required to show if and how she applied the appropriate legal standards

when considering whether evidence submitted less than five days prior to the administrative hearing should be considered.

## IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination does not permit meaningful review as to whether it is the product of the application of proper legal principles. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 18) be DENIED, the Commissioner's decision be VACATED, and this matter be remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72.

Dated: October 19, 2022
       Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge